J-A28035-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
FRANCISCO JAVIER LEMUS, :
:
Appellant : No. 2720 EDA 2016

Appeal from the Judgment of Sentence July 27, 2016
In the Court of Common Pleas of Chester County
Criminal Division at No.: CP-15-CR-0002052-2014

BEFORE: GANTMAN, P.J., PANELLA, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.: **FILED JANUARY 23, 2018**

Appellant, Francisco Javier Lemus, appeals from the Judgment of

Sentence entered by the Chester County Court of Common Pleas following

his convictions after a jury trial of, *inter alia*, numerous counts of Possession

of a Controlled Substance With Intent to Deliver ("PWID")[1] and related

offenses. After careful review, we affirm.

The trial court summarized some of the facts as follows:

On July 9, 2014, the Commonwealth charged Appellant with
2,443 violations of the Controlled Substance, Drug, Devise and
Cosmetic Act and other crimes. Evidence at Appellant's six-day
trial established that he was an active and crucial participant in a
Chester County cocaine trafficking organization run by his father.
Appellant, along with other family members, bought and sold
cocaine in 2013 and 2014, with Appellant acting as the
organization's chief operating officer when his father returned to
Mexico. On April 18, 2016, a jury found him guilty of 51 counts

---

[1] 35 P.S. § 780-113(a)(30).

of possession with intent to deliver cocaine, 49 counts of criminal use of a communication facility, 3 counts of criminal solicitation, and one count each of possession of drug paraphernalia, criminal conspiracy, corrupt organizations, and dealing in proceeds of unlawful activities.

Trial Court Opinion, 3/23/17, at 1-2. On July 27, 2016, the trial court sentenced Appellant to an aggregate term of 40 to 80 years' incarceration.

On August 24, 2016, Appellant filed a Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents six issues on appeal:

I. Whether the trial judge violated the Due Process Clause of the state and federal Constitutions when he failed to conduct any reasonable investigation into Appellant's complaints of a complete breakdown in the attorney client relationship including the claim that the attorney did not allow him to participate in jury selection?

II. Whether the trial judge violated the Due Process Clause of the state and federal Constitution when he allowed detective Jeremy Rubican, who was qualified as an expert in drug trafficking and controlled substances, to testify in a way that caused the jury to give his testimony a degree of reliability it did not deserve and abdicate its responsibility to make independent determinations of fact and instead, rely on his opinion to a "reasonable professional certainty" that the combination of words and actions of Appellant were consistent with drug trafficking?

III. Whether the trial judge violated the Due Process Clause of the state and federal Constitution when he admitted a picture of Appellant's .380 firearm which was legally possessed and had absolutely no relationship to the crimes charged in the indictment?

IV. Whether the trial judge violated the state Constitution and rule 600 when he denied bail on the theory that no combination of conditions other than imprisonment would reasonabl[y] assure the safety of the community where Appellant's crimes involved

- 2 -

distribution of ounce quantities of cocaine without violence and there was no reasonable basis to reject the request for nominal bail?

V. Whether the 40-80 sentence imposed is multiplicitous and violates state and federal case law including but not limited to **Apprendi** and **Alleyne** where the sentencing guidelines link the recommended sentence to the weight [of] the drugs distributed?

VI. Whether the sentence imposed is excessive in violation of the fundamental norms underlying the sentencing process?

Appellant's Brief at 2-3 (capitalization omitted).

## Issue 1: Appellant's Dissatisfaction with Court-Appointed Counsel

In his first issue, Appellant claims that the trial court erred in failing to inquire about Appellant's complaints about his court-appointed counsel and in failing to appoint new court-appointed counsel based on Appellant's complaints. Appellant's Brief at 8-12. Appellant avers that "[t]he [c]ourt's response was to blow him off." **Id.** at 9.

Pa.R.Crim.P 122(C) provides that "[a] motion for change of counsel by a defendant for whom counsel has been appointed shall not be granted except for substantial reasons." Pa.R.Crim.P. 122(C). "To satisfy this standard, a defendant must demonstrate he has an irreconcilable difference with counsel that precludes counsel from representing him." **Commonwealth v. Wright**, 961 A.2d 119, 134 (Pa. 2008). "The decision whether to appoint new counsel lies within the trial court's sound discretion." **Id.**

The Honorable James P. MacElree II, sitting as the trial court, has authored a comprehensive, thorough, and well-reasoned Opinion, citing the record and relevant case law in addressing Appellant's claim. *See* Trial Court Opinion, 3/23/17, at 7-8 (describing its efforts to question "Appellant and counsel about the nature of any conflict" and to resolve any issues, and concluding that Appellant never followed its instructions to file a formal motion for change of counsel explaining any unresolved issues and that Appellant never demonstrated "an irreconcilable difference with counsel" as required, including during his belated remarks during jury selection). After a careful review of the parties' arguments and the record, we discern no abuse of discretion or error of law. We affirm on the basis of the trial court's March 23, 2017 Opinion.

**Issue 2: Propriety of Expert Testimony**

In his second issue, Appellant challenges a detective's expert testimony at trial regarding intercepted cell phone conversations, text messages, surveillance activity, and the translation of coded language used in the drug trafficking world. Appellant's Brief at 12-18. Appellant contends that the detective, in testifying that he held his expert opinions to a "reasonable degree of professional certainty[,]" invaded the province of the jury and that his opinions were improper. Appellant's Brief at 15, 18.

The "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Tyson*, 119 A.3d 353, 357 (Pa. Super. 2015) (citation and quotation omitted). "Accordingly, a ruling admitting evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." *Commonwealth v. Huggins*, 68 A.3d 962, 966 (Pa. Super. 2013) (citations and internal quotations omitted).

With regard to the admission of expert witness testimony, Pennsylvania Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
> >
> > (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
> >
> > (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

We have previously held that the "standard for qualifying an expert is a liberal one: the witness need only have a reasonable pretension to specialized knowledge on a subject for which expert testimony is

- 5 -

admissible." ***Commonwealth v. Kinard***, 95 A.3d 279, 288 (Pa. Super. 2014) (*en banc*) (citation omitted). Further, "[t]he witness's expertise may be based on practical, occupational, or other experimental training; it need not have been gained through academic training alone." ***Id.*** The Comment to Rule 702 specifically states that "an expert's opinion must be expressed with reasonable certainty." Comment to Pa.R.E. 702.

This Court has previously upheld the admission of expert testimony regarding coded language. ***See***, ***e.g.***, ***Kinard***, ***supra*** at 288-89 (permitting expert testimony to clarify meaning and intent of oblique and coded language used in drug context); ***Commonwealth v. Powell***, 171 A.3d 294, 307 (Pa. Super. 2017) (upholding admission of expert testimony regarding "coded language associated with street culture.").

Appellant's contention with respect to the language the expert repeated at trial ("reasonable degree of professional certainty") lacks merit. Such familiar language about the degree of the expert's professional certainty is required in expert opinion testimony. ***See*** Pa.R.E. 702. In fact, the comment to Rule 702 specifically states that "Pa.R.E. 702 does not change the requirement that an expert's opinion must be expressed with reasonable certainty." Comment to Pa.R.E. 702.[2] After careful review, we

---

[2] Moreover, we note that the trial court provided jury instructions regarding the expert's testimony, which explained the jury's role in determining the
*(Footnote Continued Next Page)*

conclude the trial court did not abuse its discretion in admitting this expert testimony regarding coded language.

**Issue 3: Photograph of Appellant's Firearm**

In his third issue, Appellant summarily claims that the trial court erred in admitting photographs of a legally-owned .380 firearm in his truck because they were irrelevant, unfairly prejudicial, and inflammatory. Appellant's Brief at 19.

Appellant has not developed this claim sufficiently so as to enable this Court to provide meaningful review. We will not develop Appellant's issue for him. Accordingly, this challenge is waived. **See** Pa.R.A.P. 2119 (setting forth briefing requirements); **Commonwealth v. McDermitt**, 66 A.3d 810, 814 (Pa. Super. 2013) ("It is a well settled principle of appellate jurisprudence that undeveloped claims are waived and unreviewable on appeal." (citation omitted)); **Commonwealth v. Williams**, 732 A.2d 1167, 1175 (Pa. 1999) (recognizing "the unavailability of relief based upon undeveloped claims for which insufficient arguments are presented on appeal").

Even if the claim were not waived, we would conclude it is without merit based on the trial court' analysis. **See** Trial Court Opinion at 10-11 (concluding that the photographs were not inflammatory, "were relevant to

*(Footnote Continued)* ———————————

weight and credibility of the expert testimony. N.T. Trial, 4/18/16 (Closing Arguments and Jury Instructions), at 81-83.

the Commonwealth's theory that the drugs seized from the residence during the execution of the search warrant were possessed with the intent to deliver them, and were properly admitted.").[3] Accordingly, Appellant is not entitled to relief.

**Issue 4: Denial of Nominal Bail Pursuant to Pa.R.Crim.P. 600**

In his fourth issue, Appellant belatedly challenges the trial court's pre-trial refusal to release him on nominal bail after 180 days in custody pursuant to Pa.R.Crim.P. 600(B).  Appellant's Brief at 19-21.  Appellant claims this decision was erroneous on the merits, interfered with his ability to hire private counsel before trial, and "[i]t was clear that the [c]ourt denied bail as a way of forcing Appellant to enter a guilty plea."  Appellant's Brief at 21.

"Generally, a case will be dismissed if at any stage of the judicial process it is rendered moot."  ***Commonwealth v. Sloan***, 907 A.2d 460, 465 (Pa. 2006).  A defendant is no longer in pre-trial detention where he is now serving a sentence following conviction.  ***Id.*** at 464-65.  A Rule 600(B)

---

[3] ***See also Commonwealth v. Watley***, 81 A.3d 108, 114-15 (Pa. Super. 2013) (observing that the determination of whether a person possesses a drug with intent to deliver is based upon the totality of circumstances, including whether police found firearms and ammunition in close proximity to drugs); ***In re R.N.***, 951 A.2d 363, 367 (Pa. Super. 2008) (stating that the presence of a firearm in close proximity to drugs is a relevant factor in establishing PWID).

claim regarding pre-trial release on nominal bail is "technically moot" once the defendant is serving a sentence following conviction. *Id.*

Appellant did not immediately appeal the trial court's pre-trial refusal to release him on nominal bail after 180 days in custody pursuant to Pa.R.Crim.P. 600(B). *See* Pa.R.A.P. 1762(b)(2) ("Release in Criminal Matters"); Pa.R.A.P. 1516(a) (regarding petitions for judicial review of governmental determinations, including bail decisions in criminal matters as authorized in Pa.R.A.P. 1762). Appellant is no longer incarcerated in pre-trial detention; he is now serving a sentence following conviction. Thus, Appellant's claim is moot. *Sloan*, *supra* at 468.

**Issue 5: *Apprendi/Alleyne* Illegal Sentence Claim**

In his fifth issue, Appellant claims that the trial court imposed an illegal sentence because the jury did not make a finding regarding the date of the charged crimes beyond a reasonable doubt. Appellant's Brief at 22-25. Relying on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), Appellant claims that the trial court impermissibly increased his maximum punishment based on a fact that was not submitted to the jury, *i.e.*, the date of each crime. Appellant's Brief at 25.[4] As a result, Appellant sweepingly proclaims

---

[4] Insofar as Appellant's argument implicates the sufficiency of the evidence for failing to prove the date each crime was committed, or the adequacy of the indictment and bill of particulars, such claims are waived because they do not implicate the legality of Appellant's sentence and he did not otherwise raise these issues in his appellate Brief. *See*, *e.g.*, Pa.R.A.P. 2119(a) ("The
*(Footnote Continued Next Page)*

that "under controlling United States Supreme Court precedent, this Honorable Court may sentence for one count of [PWID]; one count of [C]riminal [C]onspiracy; one count of dealing in proceeds of unlawful activity." Appellant's Brief at 26.

A challenge to the legality of a sentence is a question of law. ***Commonwealth v. Wolfe***, 106 A.3d 800, 802 (Pa. Super. 2014). Therefore, this Court's standard of review is *de novo* and the scope of review is plenary. ***Id.*** "[C]laims pertaining to the legality of sentence are non-waivable, may be leveled for the first time on appeal, and our jurisdiction need not be invoked in a Pa.R.A.P. 2119(f) statement." ***Commonwealth v. Foster***, 960 A.2d 160, 163 (Pa. Super. 2008) (citation omitted). "In fact, such a claim is not even waived by a party's failure to include it in a Pa.R.A.P. 1925(b) statement." ***Id.*** (citation omitted).

In ***Apprendi***, the United States Supreme Court determined that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." ***Apprendi***, 530 U.S. at 490. In ***Alleyne***, the U.S. Supreme Court held that, other than the fact of a prior conviction, any fact that increases the penalty for a crime

*(Footnote Continued)* ─────────────

argument shall be divided into as many parts as there are questions to be argued[.]").

beyond the prescribed statutory minimum must be submitted to a jury and proved beyond a reasonable doubt. **Alleyne**, 133 S.Ct. at 2162.[5]

After careful review, we conclude that **Apprendi** and **Alleyne** do not entitle Appellant to relief. The date of the offense does not change the prescribed statutory minimum or maximum sentence. Additionally, there is no indication in the certified record that the trial court imposed a mandatory minimum sentence as part of Appellant's Judgment of Sentence, which could implicate **Alleyne**.[6] Moreover, even a cursory review of the jury's verdict slip shows that the Commonwealth specified the exact dates of each drug sale, the name of the buyer, and the trial exhibit related to each charge. **See** Verdict Slip, dated 4/18/16. Accordingly, Appellant's illegal sentencing claims are without merit and he is not entitled to relief.

**Issue 6: Discretionary Aspects of Sentence**

In his sixth issue, Appellant avers that his aggregate sentence of 40 to 80 years' incarceration is excessive based on the Federal Sentencing Guidelines. Appellant's Brief at 27-28. This implicates the discretionary aspects of his sentence. **See Commonwealth v. Lutes**, 793 A.2d 949, 964

---

[5] We observe that Appellant did not include any discussion of **Alleyne** in this section of his argument; he only cited **Alleyne** in the question presented and again in an unrelated claim challenging the discretionary aspects of his sentence. **See** Appellant's Brief at 21-26.

[6] Appellant does not claim he was sentenced to an illegal mandatory minimum sentence.

(Pa. Super. 2002) (stating that an assertion that a sentence is manifestly excessive challenges the discretionary aspects of sentencing).

Challenges to the discretionary aspects of sentence are not appealable as of right. *Commonwealth v. Leatherby*, 116 A.3d 73, 83 (Pa. Super. 2015). Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by satisfying a four-part test: "(1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b)." *Id.* (citation omitted).

Instantly, Appellant has not satisfied these requirements. Appellant did not properly preserve this issue at sentencing or in a post-sentence motion. In his Brief, Appellant relies on his "Petition for Re-Sentencing" to support his claim that he properly preserved this claim in the lower court. *See* Appellant's Brief at 27. Our review of Appellant's Petition shows that Appellant never mentioned the Federal Sentencing Guidelines or his general claim of excessiveness in any way. *See* R.R. at 587-88. Rather, Appellant merely described his sentence and presented his *Alleyne* claim. R.R. at

587-88.  Thus, Appellant has failed to preserve this issue.  *See Leatherby*, *supra* at 83.

Moreover, we conclude that Appellant has not presented a substantial question that his sentence is inappropriate under the Sentencing Code.  The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis.  *Commonwealth v. Bishop*, 831 A.2d 656, 660 (Pa. Super. 2003).  "In order to establish a substantial question, the appellant must show actions by the sentencing court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process."  *Id.*  "Bald allegations of excessiveness, unaccompanied by a plausible argument that the sentence imposed violated a provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing scheme, are insufficient to raise a substantial question."  *Commonwealth v. Lee*, 876 A.2d 408, 412 (Pa. Super. 2005).

In the instant case, Appellant has failed to raise a substantial question.  Appellant failed to include any discussion about whether this issue constitutes a substantial question or otherwise develop this argument.  *See* Appellant's Brief at 27.  The substance of Appellant's excessiveness claim, presented entirely in the Pa.R.A.P. 2119(f) Statement, is that his sentence is excessive when compared to the Federal Sentencing Guidelines.  *See*

Appellant's Brief at 28.[7]  The Federal Sentencing Guidelines are wholly inapplicable and irrelevant to the instant offenses prosecuted in state court in Pennsylvania.  *See, e.g.,* 204 Pa. Code § 303.1 *et seq.* (describing the sentencing guidelines applicable in Pennsylvania).  It is clear from our precedent that Appellant has failed to raise a substantial question as to his sentence, and therefore failed to invoke the jurisdiction of this Court.  *See Lee*, *supra* at 412 (reiterating that a bald allegation of excessiveness does not present a substantial question).

Because Appellant has failed to preserve this issue properly and has failed to present a substantial question, this Court has no jurisdiction to review Appellant's challenge to the discretionary aspects of his sentence.

The parties are instructed to attach a copy of the trial court's March 23, 2017 Opinion to all future filings.

Judgment of Sentence affirmed.

---

[7] Appellant also repeats his *Alleyne* claim.  *See* Appellant's Brief at 28. Given our resolution of Appellant's *Alleyne* claim above, we need not repeat our analysis of that issue.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/23/18</u>

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

                                         : CHESTER COUNTY, PENNSYLVANIA

         v.

                                           : CRIMINAL ACTION

FRANCISCO JAVIER LEMUS             : NO. 2052-2014

## OPINION PURSUANT TO Pa.R.A.P. 1925(a)

Francisco Javier Lemus (Appellant) has filed an appeal to the Superior Court of Pennsylvania from the judgment of sentence entered against him on July 27, 2016. We write now pursuant to the mandate of Pa.R.A.P. 1925(a).

### Factual and Procedural History

On July 9, 2014, the Commonwealth charged Appellant with 2,443 violations of the Controlled Substance, Drug, Devise and Cosmetic Act and other crimes. Evidence at Appellant's six-day trial established that he was an active and crucial participant in a Chester County cocaine trafficking organization run by his father. Appellant, along with other family members, bought and sold cocaine in 2013 and 2014, with Appellant acting as the organization's chief operating officer when his father returned to Mexico. On April 18, 2016, a jury found him guilty of 51 counts of possession with intent to deliver cocaine,[1] 49 counts of criminal use of a communication facility,[2] 3 counts of criminal solicitation,[3] and one count each of possession of

---

[1] 35 P.S. § 780-113(a)(30)
[2] 18 Pa.C.S.A. § 7512(a)

drug paraphernalia,[4] criminal conspiracy,[5] corrupt organizations,[6] and dealing in proceeds of unlawful activities.[7] On July 27, 2016, we sentenced Appellant to serve a total term of imprisonment of 40 to 80 years. This appeal followed.

## Legal Analysis

Appellant has filed his concise statement of errors complained of on appeal raising eight issues. We first address his pre-trial claims.

## Pretrial Incarceration

In his first claim, Appellant asserts that we erred in not releasing him on nominal bail after he had spent 180 days in custody prior to trial. Pursuant to Pa.R.Crim.P. 600(B)(1), "Prompt Trial," a defendant generally should not be held in pretrial incarceration in excess of 180 days from the date on which the complaint is filed. A defendant held in pretrial incarceration in excess of 180 days may file a motion for immediate release on nominal bail. Pa.R.Crim.P. 600(D)(2). There are certain exceptions to the rule that a defendant held in pretrial incarceration in excess of 180 days is entitled to bail. One exception was included in the 1998 amendment to Article I, Section 14 of Pennsylvania Constitution, and provides that a prisoner may be denied bail when a court determines that "no condition or combination of conditions other than imprisonment will reasonably assure the safety of any person and the community." *Commonwealth v. Sloan*, 907 A.2d 460, 467 (Pa. 2006).

---

[3] 18 Pa.C.S.A. § 902
[4] 35 P.S. § 780-113(a)(32)
[5] 18 Pa.C.S.A. § 903

2

In *Commonwealth v. Jones*, 899 A.2d 353 (Pa.Super. 2006), the Superior Court affirmed a trial court's denial of nominal bail to a defendant charged with rape, involuntary deviate sexual intercourse and other crimes. In denying bail, the trial court found that the defendant was a danger to the community based on the fact that he was a fugitive on other rape charges and had an extensive prior record.

In the instant matter Appellant had no prior record. He was, however, charged with over two thousand criminal violations, including hundreds of counts of possession with intent to deliver cocaine. At the February 8, 2016, hearing held on this issue, Detective Jeremy Rubincan, a full-time narcotics investigator with the Chester County District Attorney's office, testified regarding seven "controlled buys," wherein a confidential informant purchased significant amounts of cocaine directly from Appellant himself. N.T. 2/8/16, p. 18. Detective Rubincan also testified regarding threats that several potential witnesses had received since Appellant's arrest. N.T. 2/8/16, p. 31.

After hearing all of the evidence, we determined that Appellant's continued incarceration was necessary to reasonably ensure the safety of other persons and the community. Of particular concern to the Court was the fact that no condition of bail would ensure that Appellant would not continue to buy and sell cocaine, thus posing a continuing threat to his community. Accordingly, his motion was properly denied.

---

[6] 18 Pa.C.S.A. § 911(b)

## Suppression of Wiretap Evidence

Appellant next asserts that we erred when we refused to suppress wiretap evidence, claiming that wiretaps were unnecessary because "ordinary investigative methods" had already been successful in this case.

Pursuant to Pennsylvania's Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. §§ 5701-5782, the Commonwealth may apply for authorization to use a wiretap in the investigation of a pending matter. 18 Pa.C.S.A. § 5710(a). "A condition precedent to the issuance of an order authorizing an intercept is a determination by a judge of the Superior Court that 'normal investigative procedures with respect to such offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ....' 18 Pa.C.SA. § 5710(a)(3)." *Commonwealth. v. Doty*, 498 A.2d 870, 880 (Pa.Super. 1985). In making this showing, the Commonwealth is not required to establish that all other investigative methods have been exhausted. *Id*. at 881.

At a hearing held on this issue on November 18, 2015, the Commonwealth reiterated to this Court its reasons for requesting authorization for a wiretap in the Superior Court. The reasons included its failure to place an undercover officer into the Lemus drug organization, its prior surveillance and use of an informant in its investigation, and the limited efficacy of a search

---

[7] 18 Pa.C.S.A. § 5111(a)(1)

4

warrant, as only a few of the organization's multiple participants had thus far been identified. See N.T. 11/18/15, pp. 26-27.

In the instant matter we found that the Commonwealth had sufficiently established the "condition precedent" required under section 5710(a)(3) of the Wiretap Act, and the suppression of wiretap evidence was properly refused. We note here that the "Commonwealth is not required to forego additional investigation into an illegal drug conspiracy merely because it may already possess ... evidence sufficient to permit prosecution of some of the conspirators." *Commonwealth. v. Doty*, 498 A.2d at 881.

### Knock and Announce

In his next issue, Appellant claims that the Court erred when it "automatically" credited the testimony of the police over civilian witnesses at a suppression hearing held on his claim that the Commonwealth violated the "knock and announce" rule when executing a search warrant at his residence on May 1, 2014.

When executing a search warrant, law enforcement officers are to give notice of their identity, authority, and purpose to the occupants of the premises prior to the officers' entry. Pa.R.Crim.P. Rule 207(A). The police must then await a response for a reasonable period of time after the above announcement. Pa.R.Crim.P. Rule 207(B). The purpose of the rule is to prevent injury to the police and the occupants of the premises, to protect the occupant's privacy expectations, and to prevent property damage resulting from forced entry. *Commonwealth v. Frederick*, 124 A.3d 748, 755 (Pa.Super. 2015).

5

At a hearing held on Appellant's motion to suppress evidence seized pursuant to this search warrant, four witnesses testified. First to testify was Matthew Gordon, who on May 1, 2014, was working as a detective in the Chester County District Attorney's Office, and was assigned to assist in the execution of the search warrant at Appellant's residence. Detective Gordon testified that prior to the police's entry into the residence he properly "knocked and announced" himself and the police's purpose, and then waited approximately five seconds. After Detective Gordon got no response to his knock, he repeated the "knock and announce" protocol four or five more times prior to entering the residence. N.T. 4/8/16, pp. 16-17. Enrique Garcia, a Chester County Deputy Sheriff, testified that he was at Appellant's residence to assist with the execution of the search warrant and, prior to their entry into the home, heard Detective Gordon knock and announce at least three, and perhaps as many as five times. N.T. 4/8/16, pp. 29-30. Maria del Carmen Lemus, Appellant's sister, testified that she was in the home at the time of the execution of the warrant and that she heard no knocking at all prior to the police's entry. N.T. 4/8/16, p. 36. The last witness to testify was Ryan Snyder, an inmate at the Chester County prison, who shared a holding cell with the Appellant when both were at the Chester County Justice Center on May 10, 2014. Mr. Snyder testified that he overheard part of a conversation between Appellant and Deputy Garcia, part of which was in Spanish, and that from his "understanding" of the conversation the police did not knock before entering Appellant's home on May 1, 2014. N.T. 4/8/16, pp. 40-42.

Credibility at a suppression hearing "is an important determination best resolved through the court's personal observations." *Commonwealth v. Camacho*, 625 A.2d 1242, 1245 (Pa.Super. 1993). In the instant matter, we found credible the testimony of Matthew Gordon and Enrique Garcia, and thus no violation of Rule 207. That fact that our credibility determinations did not favor Appellant entitles him to no appellate relief.

## Attorney/Client Relationship

In his next issue on appeal, Appellant claims that we failed to conduct any "reasonable inquiry" into Appellant's claim of a breakdown in the attorney/client relationship, and his request for a different court-appointed attorney. Although not specified in his 1925 Statement, we assume that Appellant is referring to his comments on November 18, 2015, at the end of the hearing on his omnibus pretrial motion. At that time Appellant informed the court that he was dissatisfied with his counsel's representation, and that he desired different counsel. N.T. 11/18/15, p. 30. We questioned Appellant and counsel about the nature of any conflict, recessed the matter for the two to confer, directed that counsel and Appellant discuss and attempt to resolve any issues, and if necessary, thereafter file a motion for change of counsel. N.T. 11/18/15, pp. 31-35. No such motion was filed prior to trial. On day one of his trial, after the jury had been sworn, Appellant again expressed his dissatisfaction with his attorney who had, according to Appellant, failed to ensure the selection of a jury of his "peers." N.T. 4/11/16, pp. 59-61.

Pursuant to Pa.R.Crim.P. 122(A)(2), counsel shall be appointed to all defendants unable to afford counsel. Appellant's trial counsel, Mark Lieberman, Esquire, was appointed to represent Appellant on March 13, 2015, after Appellant's original counsel was permitted to withdraw. Pursuant to Pa.R.Crim.P. 122(C), a motion by a defendant for a change of court-appointed counsel shall only be granted for "substantial reasons." "To satisfy this standard, a defendant must demonstrate that he has an irreconcilable difference with counsel that precluded counsel from representing him." *Commonwealth v. Wright*, 961 A.2d 119, 134 (Pa. 2008). As stated previously, no motion for change of counsel was filed prior to trial, and while Appellant expressed dissatisfaction with counsel, and counsel acknowledged that the attorney/client relationship was problematic, we were presented with no evidence that counsel could not continue to zealously represent Appellant.

We note here that part of Appellant's dissatisfaction with his attorney appeared to stem from his general disdain for court-appointed counsel. See: N.T. 4/11/16, pp. 60-61. However, while an indigent defendant is entitled to free counsel, "he is not entitled to free counsel of his own choosing." *Commonwealth v. Cook*, 952 A.2d 594, 617 (Pa. 2008) (quotation omitted). Instantly, Appellant failed to provide any specifics of "irreconcilable differences" with his attorney that would have necessitated a change of counsel, and no relief is due on this claim.

### Expert Witness Testimony

Appellant next claims that we erred when we permitted Commonwealth witness Jeremy Rubincan, "to testify in a way that invited the jury to abdicate its responsibility to ascertain and

8

assess facts and make independent conclusions, and instead, defer to his expert opinion that a combination of words and action of Appellant were consistent with drug trafficking."

Jeremy Rubincan, a detective in the drug and organized crime unit of the Chester County District Attorney's office, testified at Appellant's trial. Detective Rubincan had over seventeen years of law enforcement experience, extensive training and experience in narcotics investigations and was qualified as an expert in the field of drug trafficking and controlled substances. At trial Detective Rubincan offered expert testimony regarding whether the facts and circumstances of certain transactions involving Appellant were consistent with narcotics transactions. The facts and circumstances that formed the basis of Detective Rubincan's opinions included his analysis of the contents of intercepted cell phone conversations, text messages, and surveillance activity, and the translation of coded language. Admission of this testimony was not error, for expert testimony is admissible to "interpret and explain the use of code words and the meaning of certain language used in drug trafficking." *Commonwealth v. Riffert*, 549 A.2d 566, 576 (Pa.Super. 1988) (quotation omitted).

In addition, the Court instructed the jury regarding the proper use of expert testimony during the trial. The jury was instructed that it was to decide what weight to give the expert testimony, and that it was entirely up to the jury to accept or reject the opinions offered. N.T. 4/13/16, pp. 106-107, 122-124. In that the testimony was properly admitted, and the Superior Court has held that such testimony does not invade the province of the trier of fact,

*Commonwealth v. Vitale*, 664 A.2d 999, 1001 (Pa.Super. 1995), Appellant is entitled to no relief on this claim.

### Photograph of Firearm

Appellant next claims that we erred when we permitted the Commonwealth to show the jury photographs of his .380 caliber firearm.

On day five of Appellant's trial Chester County Detective Kenneth Beam testified. Detective Beam participated as photographer in the execution of the search warrant at Appellant's home on May 1, 2014. Several of the detective's photographs were shown to the jury, including photographs of the interior of a truck, frequently used by Appellant, parked at his residence on May 1, 2014. Photographed on the seat of the truck was Appellant's (legally owned) handgun. Defense counsel objected to the jury being shown these photographs, claiming that the pictures were irrelevant, prejudicial, and inflammatory. N.T. 4/15/16, pp. 60-64.

The admissibility of photographs falls within the discretion of the trial court. *Commonwealth v. Lowry*, 55 A.3d 743, 753 (Pa.Super. 2012). This issue often arises in accident or homicide trials, where photographs of the victim's body or injuries are offered by the Commonwealth. When deciding whether to admit a photograph, a court employs a two-step analysis, first considering whether the photograph is "inflammatory." If so, the court then considers whether the photograph's evidentiary value outweighs the likelihood that the photograph will improperly inflame the minds and passions of the jury. *Id.* The term "inflammatory" has been interpreted by the Superior Court to mean that "the photo is so

10

gruesome it would tend to cloud the jury's objective assessment of the guilt or innocence of the defendant." *Commonwealth v. Funk*, 29 A.3d 28, 33 (Pa.Super. 2011). The proffered photographs clearly did not meet the definition of inflammatory, were relevant to the Commonwealth's theory that the drugs seized from the residence during the execution of the search warrant were possessed with the intent to deliver them, and were properly admitted.

## Sentencing

Appellant's final two claims involve his sentence. Appellant asserts that the Court improperly sentenced him based on the quantity of drugs sold, which quantity was not found by the jury, and that the Court's sentence of 40 to 80 years "was imposed as a penalty for the right to stand trial." We disagree.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed absent a manifest abuse of that discretion. *Commonwealth v. Glass*, 50 A.3d 720, 727 (Pa.Super. 2012). To establish a manifest abuse of discretion, an appellant must show that the sentencing court "ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Commonwealth v. Haynes*, 125 A.3d 800, 808 (Pa.Super 2015). Such deference is accorded because it is the sentencing court that is in the best position to review the defendant's character and the overall effect and nature of the crimes. *Commonwealth v. Cook*, 941 A.2d 7, 12 (Pa.Super. 2007). Further, a sentencing court is perceived to be in the "best

11

position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Commonwealth v. Ward*, 568 A.2d 1242, 1243 (Pa. 1990).

In the instant matter a jury found Appellant guilty of 107 separate criminal counts, including 51 counts of possession with intent to deliver cocaine. Prior to imposing sentence, the Court had the benefit of a presentence investigation report (PSI). "When a sentencing court has reviewed a presentence investigation report, we presume that the court properly considered and weighed all relevant factors in fashioning the defendant's sentence." *Commonwealth v. Baker*, 72 A.3d 652, 663 (Pa.Super. 2013). In addition, prior to imposing sentence we considered the factors set forth in 42 Pa.C.S.A. § 9721(b), specifically "the protection of the public, the gravity of the offense as it relates to the impact on the victim and the community, the defendant's rehabilitative needs, and the sentencing guidelines." *Commonwealth v. Feucht*, 955 A.2d 377, 383 (Pa.Super. 2008).

The individual circumstances leading to the sentence imposed included the fact that Appellant was second-in-command of his family's drug trafficking operation, and had, over a significant period of time, provided his community with illegal drugs. His family's drug trafficking operation had multiple participants, and was involved in multiple transactions. While we acknowledged Appellant's youth, and the fact that his father, as the head of the enterprise may be slightly more culpable than Appellant, see: N.T. 7/27/16, pp. 16-17, we nevertheless believed then, and believe now, that a lengthy sentence was the only appropriate sentence in this case.

12

Appellant's aggregate sentence included no mandatory provision, and on each count Appellant was sentenced within the guideline range. However, the Court's did exercise its discretion to have some of Appellant's sentences run consecutively. *Commonwealth v Prisk*, 13 A.3d 526, 533 (Pa.Super. 2011). Instantly, Appellant was convicted of over fifty counts of possession with intent to deliver cocaine. In *Commonwealth v. Mouzon*, 828 A.2d 1126, 1130 (Pa.Super. 2003), the Superior Court affirmed a trial court's imposition of consecutive sentences, noting that it had in the past "expressed concern against running sentences concurrently by way of habit, lest criminals receive 'volume discounts' for their separate criminal acts." The *Mouzon* court's words also apply here: "The significant sentence in this case is commensurate with the significant amount of crime that [Appellant] committed." *Id.* Appellant's aggregate sentence was consistent with the protection of the public, the gravity of Appellant's multiple offenses, and Appellant's rehabilitative needs. He is entitled to no relief on his challenge to the sentence imposed.

BY THE COURT:

**JAMES P. MacELREE II**                                         J.

DATE: 3/23/2017

Certified From The Record

This 24 Day of May 2017

Deputy Clerk of Common Pleas Court

13